## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| LEON WEINGRAD, individually and on behalf of all others similarly situated, | : : | CIVIL ACTION FILE NO. |
| | : | |
| *Plaintiff,* | : | |
| | : | |
| v. | : | **COMPLAINT – CLASS ACTION** |
| | : | |
| DIRECT HEALTH SOLUTIONS INSURANCE AGENCY, LLC, | : : | **JURY TRIAL DEMANDED** |
| | : | |
| *Defendant.* | : | |
| | : | |
| | : | |
| _____/ | | |

Plaintiff Leon Weingrad (hereinafter referred to as "Plaintiff"), individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of his counsel, and on information and belief, as follows:

## NATURE OF ACTION

1. "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers,' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms,' *id.* § 2(9)." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649 (4th Cir. 2019).

2.      "[T]he law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.'). . . . [P]rivate suits can seek either monetary or injunctive relief. [47 U.S.C. § 227(c)(5)]. . . . This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Id*. at 649-50.

3.      Plaintiff, individually and as class representative for all others similarly situated, brings this action against Defendant for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") for making telemarketing calls to numbers on the National Do Not Call Registry, including his own.

4.      Weingrad also alleges that Defendant used automated systems to make telemarketing calls from and into Florida, and that by doing so, Defendant has violated the provisions of the Florida Telephone Solicitations Act, Fla. Sta § 501.059.

5.      Because these calls were transmitted using technology capable of generating thousands of similar calls per day, Plaintiff sues on behalf of a proposed nationwide class of other persons who received similar calls.

6.      A class action is the best means of obtaining redress for the Defendant's illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and FTSA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## PARTIES

7.      Plaintiff Leon Weingrad is an individual.

8.      Defendant Direct Health Solutions Insurance Agency LLC is a Coral Springs, FL based health insurance agency that uses illegal telemarketing calls to solicit business from this District.

## JURISDICTION AND VENUE

9.      This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*. This Court has supplemental jurisdiction over the state law claims since they relate to the same telemarketing campaign.

10.     This Court has general personal jurisdiction over Direct Health because it has its principal place of business in this District.

11.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because the Defendant is a resident of this State.

## TCPA BACKGROUND

The Enactment of the TCPA and its Regulations

12.      In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

13.     Section 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

14.      The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

15.     A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

16.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are made. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

<u>The Florida Telephone Solicitations Act</u>

17.     The Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059 was amended by Senate Bill No. 1120 on July 1, 2021.

18.     It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection and dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

19.     A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will

or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

20.     Pursuant to § 501.059(10)(a) of the FTSA, damages are available at a minimum of $500.00 for each violation.

## FACTUAL ALLEGATIONS

21.     Defendant is a "person" as the term is defined by 47 U.S.C. § 153(39).

22.     Plaintiff Weingrad is also a "person" as the term is defined by 47 U.S.C. § 153(39).

23.     At no point has the Plaintiff consented to receive telemarketing calls from the Defendant regarding the sale of goods or services, including health insurance services, prior to receiving the automated calls at issue.

Calls to Plaintiff

24.     Mr. Weingrad's residential telephone number is (267) XXX-XXXX.

25.     That telephone number is a residential telephone line used by Mr. Weingrad for personal calls and for personal, family, and household use.

26.     The telephone number is a residential number because it is assigned to a telephone exchange service for consumers, not a telephone exchange service for businesses.

27.     Mr. Weingrad does not use the number for business reasons and the number is not registered in the name of or associated with a business.

28.     The number is in Mr. Weingrad's name and he pays the bill.

29.     Plaintiff Weingrad never consented to receive calls from Defendant.

30.     Plaintiff Weingrad never did business with the Defendant.

31.     Mr. Weingrad registered his residential telephone number on the National Do Not Call Registry for more than a year prior to the calls at issue, and it has remained on the Registry since that time.

32.     Despite this, the Plaintiff received at least 3 calls from the Defendant, which were sent on December 13, 2023 and solicited him to sign up for health insurance.

33.     The first such call occurred on December 13, 2023 and came from the phone number 267-293-5434. This was a missed call.

34.     The Plaintiff received yet another call on December 13, 2023 which came from the same phone number, 267-293-5434. The caller identified themselves as calling from the "National Health Enrolment Center" and the purpose of the call was to sell the Plaintiff health insurance by enrolling him in a health insurance plan.

35.     The Plaintiff does not exactly recall the outcome of the call, but the Plaintiff believes and therefore avers that he indicated that he was not interested in providing such information and hung up.

36.     Despite this fact, the Plaintiff received yet another call that same day from the phone number 267-293-5432. The caller identified themselves as calling from the "National Health Enrolment Center" and the purpose of the call was to sell the Plaintiff health insurance by enrolling him in a health insurance plan.

37.     The Plaintiff does not exactly recall the outcome of the call, but the Plaintiff believes and therefore avers that he indicated that he was not interested in providing such information and hung up.

38.     Defendant used the illegal fake name "National Health Enrolment Center" during the calls to hide its illegal conduct.

39.     Defendant is a health insurance agency that sells health insurance.

40.     A subsequent subpoena in a related action revealed that Defendant Direct Health was the subscriber of record for each of the numbers at issue reproduced above.

41.     Although the first call was a missed call, the other calls were sent to also solicit the Plaintiff to purchase a health insurance plan. The Defendant's calls were all made to sell the Plaintiff health insurance plans. They were therefore all made for telemarketing purposes.

42.     The Defendant called the Plaintiff at least three times attempting to solicit the Plaintiff for a health insurance plan that Plaintiff had no interest in.

43.     The Defendant subscribed to both of the telephone numbers described above through a service named Convoso, a manufacturer and seller of turnkey artificial intelligence automated contact center software used by businesses, like Defendant, to market their products and services via telephone.

44.     Convoso is "a leading contact center software provider (CCaaS) for *sales and lead generation* teams." See *Auto Dialer Software*, Convoso, https://www.convoso.com/products/autodialer-software/        [https://archive.md/WNWYg] (emphasis added).

45.     Defendant therefore used automated marketing software to place the calls.

46.     All of the calls were placed during ObamaCare's Open Enrolment period, the only time of the year when Americans can sign up for health insurance, which lasted from November 1, 2023 through January 16, 2024. *See A Quick Guide to the Health Insurance Marketplace*, Dept. of Health & Human Serv's, https://www.healthcare.gov/quick-guide/dates-and-deadlines/.

47.     The purpose of the two call Plaintiff answered, and the at least one other calls Plaintiff received, therefore, was to give a quote for and ultimately sell the Plaintiff health insurance plans.

48.     These calls originated using a SHAKEN/SITIR "A" attestation, indicating that the subscriber identity was verified by the telephone carrier and that the calls were not spoofed. The fact the Defendant was the subscriber of record for the calls was confirmed through a subpoena on Convoso.

49.     Moreover, the behavior the Plaintiff experienced of receiving three calls on a same day, evidently without any ability to respect a do not call request, is a textbook indication that an automated system was used to place the calls, as it would be illogical for a human to call someone multiple times who had not requested to be called, even as an initial matter.

50.     Indeed, the Convoso system uses "automated" means to select and dial calls. To this end, another insurance agency was recently featured as a case study for how Convoso led to a 1000% increase in outbound calls to sell insurance, including by being able to send out calls with hundreds of sales agents and capture call backs and missed calls. *Top Healthcare Options, Convoso Customer Success Story*, CONVOSO (Nov. 2020), https://www.convoso.com/wp-content/uploads/2020/11/Top-Healthcare-Options_Convoso-Customer-Success-Story.pdf [https://archive.is/PEeGG].

51.     The Court can take judicial notice of continuous complaints from individuals as recently as September 7, complaining of "incessant" calls from the "National Health Enrollment Center." *See National Health Enrollment Center*, PISSEDCONSUMER (Sept. 7, 2024), https://national-health-enrollment-center.pissedconsumer.com/review.html#reviews [https://archive.is/nUakH].

52.     Defendant has used and will continue to use the fake name "National Health Enrolment Center" in the absence of an injunction.

53.     Defendant has not taken steps to rectify its use of a fake name by registering the fictitious name "National Health Enrolment Center."

54.     Defendant knew what it was doing was illegal, so it illegally used a fake name during the calls to minimize the risk of getting caught.

55.     Defendant's identity at the outset of this case was originally not ascertained based on Defendant's own wrongdoing and use of a fake name.

56.     Defendant refused to identify its real name or real address on the calls.

57.     Defendant "banned" callers who called back if they asked too many questions or were unable to make a sale, thus further hampering Plaintiff's counsel's investigative efforts.

58.     Defendant also did not register its aforementioned multiple anonymous caller IDs to its name and took steps to scrub the telephone numbers it was using to call people from Google.

59.     The aforementioned facts show that the Defendant knew what it was doing was illegal and necessitated the issuance of two court orders and subpoenas in another case.

60.     Defendant evaded detection for the better part of six months.

61.     Defendant's actions are a textbook example of the pot calling the kettle black, being blind to its use of a fake name and other techniques to hide its identity, duck TCPA liability, and avoid ill will for its brand, necessitating treble damages.

62.     Plaintiff never consented to receive calls from Defendant.

63.     Plaintiff never did business with the Defendant.

64.     Based on the foregoing, it is evident that Defendant mass-dial calls indiscriminately and incessantly, including to numbers on the Do Not Call Registry.

65.     Plaintiff's privacy has been violated by the above-described telemarketing calls.

66.     Plaintiff never provided his consent or requested these calls.

67.     The aforementioned calls to the Plaintiff were unwanted.

68.     The calls were non-consensual encounters.

69.     Plaintiff and all members of the Classes, defined below, have been harmed by the acts of Defendant because their privacy has been violated and they were annoyed and harassed. In addition, the calls occupied their telephone lines, rendering them unavailable for legitimate communication, including while driving, working, and performing other critical tasks.

## CLASS ACTION ALLEGATIONS

70.     Plaintiff brings this action on behalf of himself and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23.

71.     Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

**National Do Not Call Registry Class**: All persons in the United States whose (1) residential telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call from or on behalf of Defendant, (3) within a 12-month period, (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

**Florida Telephone Solicitation Act Autodial Class**: All persons in the U.S., who, (1) received a telephonic sales call from Defendant made from or into Florida regarding insurance goods and/or services, (2) using the same equipment or type of equipment utilized to call Plaintiff (3) since July 1, 2021.

72.     Plaintiff is a member of and will fairly and adequately represent and protect the interests of the classes as he has no interests that conflict with any of the class members.

73.     Excluded from the Classes are counsel, the Defendant, and any entities in which the Defendant have a controlling interest, the Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

74.     Plaintiff and all members of the Classes have been harmed by the acts of the Defendant, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of their telephone power and network bandwidth, and the intrusion on their telephone that occupied it from receiving legitimate communications.

75.     This Class Action Complaint seeks money damages.

76.     The Classes as defined above are identifiable through the Defendant's dialer records, other phone records, and phone number databases.

77.     Plaintiff does not know the exact number of members in the Classes, but Plaintiff reasonably believes Class members for each Class number, at minimum, in the hundreds based on the fact that recorded messages were used to send the calls.

78.     The joinder of all Class members is impracticable due to the size of the Classes and relatively modest value of each individual claim.

79.     Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

80.     There are numerous questions of law and fact common to Plaintiff and to the proposed Classes, including but not limited to the following:

(a) Whether the Defendant used automatic equipment as defined by Florida law to send telemarketing calls;

(b) whether Defendant made calls to Plaintiff and members of the Classes without first obtaining prior express written consent to make the calls;

(c) whether Defendant's conduct constitutes a violation of the TCPA or FTSA;

(d) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct; and

(e) whether Defendant Direct Health is vicariously liable for calls placed by telemarketing vendors, if any.

81.     Further, Plaintiff will fairly and adequately represent and protect the interests of the Classes. Plaintiff has no interests which are antagonistic to any member of the Classes.

82.     Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions.  Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other members of the Classes and have the financial resources to do so.

83.     Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy.

84.     The likelihood that individual members of the Classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

### FIRST CAUSE OF ACTION
**Violation of the Telephone Consumer Protection Act**
**47  U.S.C. 227(c) on behalf of Plaintiff and the National Do Not Call Registry Class**

85.     Plaintiff incorporates the allegations in paragraphs 1-84 as if fully set forth herein.

86.     The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the telephone numbers of Plaintiff and members of the Class on the National Do Not Call Registry.

87.     As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of $500 in damages for each and every call made to their numbers on the National Do Not Call Registry in violation of the statute, pursuant to 47 U.S.C. § 227(c)(5).

88.     If the Defendant's conduct is found to be knowing or willful, the Plaintiff and members of the Class are entitled to an award of up to treble damages.

**SECOND CAUSE OF ACTION**
**Violation of the Florida Telephone Solicitation Act,**
**Fla. Stat. § 501.059**
**On Behalf of Plaintiff and the Florida Telephone Solicitation Act Autodial Class**

89.     Plaintiff repeats and incorporates the allegations set forth in the paragraphs 1-84 as if fully set forth herein.

90.     Plaintiff brings this claim individually and on behalf of the Florida Telephone Solicitation Act Autodial Class Members against Defendant.

91.     It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection and dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

92.     A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

93.     Defendant failed to secure prior express written consent from Plaintiff and the Class Members.

94.     In violation of the FTSA, Defendant made and/or knowingly allowed telephonic sales calls to be made to Plaintiff and the Class members without Plaintiff's and the Class members' prior express written consent.

13

95.     Defendant made and/or knowingly allowed the telephonic sales calls to Plaintiff and the Class members to be made utilizing an automated system for the selection or dialing of telephone numbers.

96.     As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the Class members are also entitled to an injunction under the FTSA against future calls. *Id.*

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A.     Injunctive relief under the FTSA prohibiting Defendant from calling telephone numbers in violation of the FTSA in the future;

B.     That the Court enter a judgment awarding Plaintiff and all class members statutory damages of $500 for each violation of the TCPA or FTSA and $1,500 for each knowing or willful violation;

C.     That the Court enter a judgment awarding Plaintiff and all class members statutory damages of $500 for each violation of the TCPA or FTSA and $1,500 for each knowing or willful violation as their actual damages for violations of the FTSA, together with fees and costs of suit; and

D.     An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing such Classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Classes, and appointing the lawyers and law firms representing Plaintiff as counsel for the Classes;

E.      Such other relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff requests a jury trial as to all claims of the complaint so triable.


Dated: December 3, 2024                    PLAINTIFF, individually and on behalf of all
                                           others similarly situated,

                                           */s/ Avi R. Kaufman*
                                           Avi R. Kaufman (FL Bar no. 84382)
                                           kaufman@kaufmanpa.com
                                           Rachel E. Kaufman (FL Bar no. 87406)
                                           rachel@kaufmanpa.com
                                           KAUFMAN P.A.
                                           237 South Dixie Highway, 4th Floor
                                           Coral Gables, FL 33133
                                           Telephone: (305) 469-5881

                                           *Attorneys for Plaintiff and the putative class*